The Fifth Circuit Court of Appeals. There are four cases to be argued in this courtroom this morning. We will hear the first case and then take a brief recess to reconstitute the panel, and then the panel will resume for the final three cases with Judge Jones presiding. We'll begin then with Morgan v. Huntington Ingalls, Incorporated. Mr. Futrell. May it please the Court. My name is John Futrell, and I represent the appellants associated with the former Avondale Shipyard. The issue on this appeal is whether a notice of removal filed within 30 days of receipt of a deposition transcript is timely under 28 U.S.C. 1446 B.3. You say that's controlled by the SWS Erector's case, is that right? Sir? That that's controlled by the SWS Erector's case, is that right? Yes, sir. I believe that it's at least binding or controlling or persuasive authority. Yes, Your Honor. The answer to this question is not difficult, Your Honor, because Congress has pretty much answered it for us. 1446 B.3's plain language leads inescapably to the conclusion that removal delays are triggered by defendant's receipt of a deposition transcript, not by what the defendant's lawyer hears a deponent say. But the language also says for when first ascertained, correct? Correct, Your Honor. And there's no doubt here that you didn't ascertain it. You ascertained it before either the deposition or the receipt of the transcript. I'm sorry, Your Honor. I mean, first of all, the statute speaks in terms of receipt that you must ascertain whether it's removable from the document that you receive, which is a relative pronoun relating back to the documents enumerated in the first part of the sentence, Your Honor, in 1443 B.3. To the extent that I understand your argument, it's built on our own precedent and it's built on the text of 1446, correct? Also, Your Honor, it's based on this Court's rule that removal delays cannot be based on the subjective knowledge of a defendant. And in our view, what is said in a deposition remains subjective knowledge of the listener until it's reduced to a transcript transcribed by a disinterested third party, Your Honor. But other courts, there are a whole set of different views on this, correct? Well, Your Honor, with all due respect, I don't believe the other courts, with the exception of the Tenth Circuit and Huffman, have directly addressed the issues that we're addressing today. In all of those courts, they were just looking at whether a deposition could be – anything to do with a deposition could be something that would trigger 1446 B.3. But they were looking at the question of events that create removability, not to the time on this issue. So Huffman is just wrong? Your Honor, I would submit that Huffman is wrong. And yet Huffman's quotes stating that our view in SWS, which you rely on, is consistent with their outcome, correct? Well, Your Honor, with all due respect, in Huffman, transcript – they did not consider the full text of 1446 B.3. What they did is they looked at cases that had decided 1443 B.3 in connection with whether it can be a removable event, but they did not look at it in connection with the timeliness issue, Your Honor. Also, in Huffman, they did not look at the justus generis statutory rule of construction. They didn't consider the rule that you can't remove based on a defendant's subjective knowledge. They did not look at the fact that this case that we're before today is a federal officer removal case, Your Honor, in which you're supposed to construe the statute liberally, Your Honor. That was a general removal statute under 1441. It wasn't under 1442, Your Honor. Now, 1446 B.3 provides, in relevant part, that a notice of removal may be filed within 30 days of receipt by a defendant of a copy of an amended pleading order or other paper from which it may be first ascertained that the case is removable. Under the justus generis rule of construction, whenever specific words follow general words in a statutory enumeration, the general words must be construed to embrace only those objects similar in nature to the objects enumerated in the preceding specific words. As between the deposition transcript and the spoken word, a deposition transcript shares almost all the salient qualities of the statutorily enumerated documents, while the spoken word shares virtually none. In fact, almost every noun and pronoun in 1446 B.3 point to a document. First, it talks about receipt of a document. I'm sorry. It talks about receipt of a document. What if during the deposition there's a streaming printout of the transcript? Would that qualify? No, sir. I don't believe so, because in that case, you don't have the court reporter going over it to make sure all the words are correct. In my view, Your Honor, it should be a receipt of a certified copy of a transcript. Now, as you know, Your Honor, in today's world, you can pay the court reporter extra and get that the next day. But, no, the dirty copies, I don't believe, should trigger the 30-day removal period. What if the court reporter went over his or her work and finalized it and cleared up all of the errors and then sent the transcript electronically to the attorneys or the parties, and the hard copy didn't arrive by mail until several days later? How would we count that? Your Honor, as would happen in this case, I think it's when you receive the electronic copy, Your Honor, and that's what we used in this case to do the trigger. We did an affidavit or a paralegal that received the deposition transcript. But that's not a paper, is it? Your Honor. You're diverting from your argument about the claim that it was paper. No, I understand that. And that's the reason a lot of courts previously, I mean, some of the district courts back in the 90s, rejected anything to do with the deposition being another paper. But I understand your argument, Your Honor. But the fact that we filed briefs to you electronically, I think in today's world, especially under the Federal Rules of Appellate Procedure and the Federal Rules of Civil Procedure, anything that is reduced to an electronic writing is, quote, a writing, Your Honor. And I think receipt of that electronic copy, and it's very easy to assert, and I mean courts haven't had any trouble doing it in this circuit for almost 20 years.  All right. Good morning, Your Honors. Chris Chocolese from Murphy Oil. I was going to let you pronounce it. I wasn't even going to give it a try. Thank you. Thank you, Your Honor. So say it again. Chris Chocolese. Chocolese, thank you. Thank you. Thank you, Your Honor. Just to follow up with a couple points made by a co-defendant, I think if you look at the cases where the courts say that the deposition date is what triggers the 30-day requirement, there's something missing, which is that when you file the notice of removal, what is it being based on? Are the attorneys, you know, the affidavit from the attorney doesn't work? Are they just stating it conclusorily in the pleading as to what the deposition says? No. I mean, if you look at all of them, and as context, in the Huffman case, which was cited by the district court, they talked about manipulating the date, that the deposition date is a bright line, but the transcript date can be manipulated. But if you look at all these cases, the deposition transcript has to be provided within 30 days. Otherwise, what is everybody looking at? They have to be looking at the deposition transcript, which suggests that in all these cases that they're being talked about, the transcript is being provided very soon after the deposition, which is what happened here, which is what happens in every case. So the idea that there is some – You said it has to be produced within 30 days? I mean, it's – It doesn't have to be, but as in reality, the whole theory that the deposition date can trigger, it presupposes that you're getting the transcript in time to see what is said. Because if you look at – even in one of the cases that plaintiffs cite, the Papp case, which is a Sixth Circuit case, in the footnote that discusses it, the courts are citing cases on this issue, and they say, we ask not what the defendant knew but what the relevant document said to determine what is federal – if there is federal jurisdiction. So if you're looking at what the document said, you've got to actually see the transcript. So if you want to make the argument that the deposition date is what triggers it and then you'll get the deposition transcript a week – whether it's two days, but maybe the court is sick and maybe you get it in four days. So maybe you get it a week later. So now you're limited to 23 days from when you get the transcript and when you can determine what is actually said. And that's why we think this court's decision in Bosque is so relevant because if you look, it uses different – 1446 uses different language. It uses – for 1446b-1, setting forth the jurisdictional basis. And for 1446b-3, it uses ascertain. And that means you have to clearly – it has to be unequivocal. And the only way you can determine – But here, factually, it was unequivocal. The documents that show it were documents you came into the deposition with. Avondale came into the deposition – Avondale had the documents. But the – as this Court has said, the subjective knowledge, until they get confirmation from the deposition testimony – Okay. But then that slips into their rule. There was confirmation at the deposition. Well, when I say – again, it's – and it's – this is an example of how it's – it's confirmation at the deposition testimony when you get the transcript. Now, again, the testimony is given at the deposition. When you can actually determine what is said for purposes of being unequivocal, you need the transcript. But that – you know, that almost highlights the part of – a lot of times these removals are based on a combination of testimony and documents. So the argument you've just given us is mostly responding to the Huffman fear of gamesmanship. Correct. That's what you're saying – that the Brightline rule you're saying isn't really subject to gamesmanship. I don't think that there's any proof that it could ever be subject to gamesmanship because, again, We are trying to tease out what's paper and what's not paper is getting difficult for courts. Is it true that if we follow the precedent you're urging and Avondale's urging, we will maintain a clear split with the Tenth Circuit? There's no way to reconcile our position with the Huffman decision. Is that a split that already exists and you're asking us to just continue? I think the Huffman decision is flawed. Yes. So, yes, we do think that the Huffman decision is flawed. But the difficulty with that for me is it is a thorough analysis in Huffman and it purports to cite us favorably and it also cites Wright and Miller favorably for the more embracive notion of what's a paper. Respectfully, Wright and Miller also talked about the 1446b-3 being something written. Right. So, you know, it's not an open and shut case after looking at all of this. Well, then, my last question is how would you answer the question I asked your colleague? If it were streaming in a printout, which I assume can happen, that would seem to me to be a voluntary act that is now in writing possessed by the defendant. It didn't happen here factually. I would have thought that would be a triggering moment for the clock. Instead of, oh, well, this is official, the errata have been worked out, it's been transmitted otherwise. Do you have a thought on that? You know, I would probably tend to agree with my co-counsel in that you would want, because we have seen those streaming transcripts, and sometimes I'll just give you a quick example. We were in a trial recently a couple weeks ago where the court reporter missed a keyword that everyone had was sitting there at trial watching the transcripts, and they actually said to the judge, hold it, hold it, that's not what he said. And the judge said, it's okay, it's going to be corrected. So I think that is getting a lot closer. The idea, though, I think that's closer to the idea that it's not what we hear, because people when they have, you know, lawyers will hear things differently. It's what you can see by a disinterested observer on black and white in some way. So I think, again, I think the streaming transcripts get you very closer, get you a lot closer, but I think you do want that extra checking to make sure that there's not some kind of glaring error. So subject to that, we'll reserve the rest of the hearing. All right, thank you, Mr. Chaklis. Let me ask just the students, are you all understanding what's going on? It's a real easy question, what is paper? That's a little bit more involved than that. Anybody want to be a lawyer? You have one on the front row right there? Come on up, sit down at this table with these lawyers over here. Anybody else? Nobody else wants to be an attorney? She needs a little help. She's got no one on her side. All right, she needs some help over here on her side. I need somebody to come sit with this lady over here and help her out. Oh, well, he's got a tie on. God, I didn't know they had to let you guys grow beards in school. Just students or a teacher? Teacher, he's a teacher. We'll let him go. What do you all think? Should we let him? Okay. All right, it's time for Ms. Melanson. May it please the Court, Counselors, Renee Melanson on behalf of the late Mr. Curtis Morgan. The district court correctly found that Avondale should have removed this case within 30 days of Mr. Morgan's deposition testimony. Instead, Avondale waited 38 days. Ms. Melanson. We're going to interrupt you. It's not your fault. Judge Smith has said we could add two minutes if you'd be able to just describe with elevated voice the facts underlying the controversy instead of diving right to your legal argument. But you'll have two extra minutes to do that. Do you mind doing that? This is for the students' benefit. Normally we tell lawyers not to do that. I would love to. It's a good idea. Go ahead. This case is about what? This case is about Mr. Morgan passed away eight weeks ago. He died of mesothelioma, which is a rare and incurable cancer, which is caused by exposure to asbestos. Before he died, he was deposed on eight days over a period of five weeks. The appellant, Avondale, deposed him on two of those days. On the second day, Avondale's counsel brought with it Mr. Morgan. Why don't you explain what a deposition is? Because that's kind of a strange word. For the students, that's a strange word. Okay. A deposition is when a party is questioned by opposing counsel or sometimes their own counsel about the facts underlying their case. But it's like in someone's office, not in a courtroom, right? Correct. Right. Or a conference room or what have you. In this case, Mr. Morgan was deposed over eight days while he was dying. On the second day that Avondale went in for the deposition, it brought in Mr. Morgan's employment records. Those records showed that Mr. Morgan had been injured six times, not an asbestos-related injury but other injuries like trip and fall kind of injuries, while he was working on a government ship called the USS Huntsville. Through the testimony, Mr. Morgan testified he did not recall working on the Huntsville. He only remembered working on one ship at Avondale called It Was a Likes Vessel. However, through repeated questioning by Avondale's counsel, Mr. Morgan admitted that if he did, in fact, work on the Huntsville, then he would have worked around insulators and would have been exposed to whatever the insulators were using. And just for the students, I'll explain. This is important because the material that insulators use, insulating material that typically goes around pipes or in valves, contains asbestos, sometimes a lot of asbestos. And when it's disturbed, when the insulators use it, it releases asbestos into the air. And when people breathe it, it gets into their lungs, and it can cause diseases such as mesothelioma, which is what Mr. Morgan had. So Mr. Morgan was working at the shipyard on ships, and he's alleging that he got asbestos from working on the ships. And he filed a lawsuit in the state courts. And then when he was interviewed by the lawyers, it turned out that maybe he had worked on a ship owned by the U.S. government, which would then mean the lawsuit maybe could come into the federal courts out of the state courts. And the question is, you have 30 days from when you learned this to bring it into federal court. And the question is whether that oral interview starts the 30 days or not until it's typed up and written up due to the 30-day start. Is that right? Yes, Your Honor. And to be clear, there was no question at the time of the deposition that Avondale had every intention of removing the case under the federal officer removal statute. Avondale's attorney went into the deposition with the employment records with the direct intention of questioning Mr. Morgan on this issue. During the deposition, Avondale's counsel commented that the ship was being retrofitted to be used for the entry of the Apollo spacecraft into the atmosphere, and I don't know the details, but the ship was going to be used to track it. So there was no question that this was Avondale's intent. And by the end of the deposition, Avondale had ascertained the facts it needed to establish federal officer removal jurisdiction and to remove the case. Therefore, Mr. Morgan's deposition formed the basis of Avondale's removal to federal court. That is to say, it was the other paper that Avondale needed to remove this case to federal court. Avondale and Murphy Oil tell you that there is a plain meaning, which is not the deposition meaning, deposition testimony, that it is some sort of deposition transcript. Your Honors, that is not true. The definitions they ascribe to other paper are a mess. Just looking at their papers, you can see... The paper has to mean paper here, an oral statement. Your Honor, when the... It's reduced to writing. How can not paper equal paper? Because, Your Honor, the legislature enacted this statute in 1949, and they could not conceive of every sort of thing that would trigger this statute, such as electronic filing. So they used the words other paper as a catch-all phrase to anticipate the known unknowns, and that's what it is in this case. And if you look at the briefs of the appellants, you can see the ambiguity when they try to define what other paper means just by using the phrase paper. For example, Avondale says it's triggered by the electronic filing. Murphy Oil maintains in its brief that, no, it's got to be a paper or written document. Avondale maintains in this case that applicable paper was the transcript of Mr. Morgan's deposition... But doesn't it at least it has to mean something they can attach to their motion to remove? I see what you're saying. But you couldn't attach something that's just in the air audibly. I see what you're saying, Your Honor. Under 1446A1, the notice of removal is a short and plain statement. You don't need to attach any documents such as that. Then what happens is the plaintiff files a motion to remand, and at that point when the defendant responds, they need to reduce their evidence. Now, if at that point they still don't have a transcript, certainly they can ask for more time. But as appellants say, they try to make it sound like they're going to get the transcript real fast, so probably at that point they will have the transcript. But, again, if they don't, they can request more time to get it. So for purposes of removal, they don't need the transcript at that point. They can simply remove on their short and plain statement. Now, focusing on the word paper for a minute, we had a case three or four years ago, nothing to do with what we're dealing with here, but it was a case construing Rule 58, which, as you know, requires a separate document for entry of judgment. And the panel issued an opinion, a Fifth Circuit panel issued an opinion, that said that the Rule 58 document had to be a separate piece of paper. Several weeks later, the panel withdrew that opinion and reissued it to say it only had to be a docket entry in recognition of the fact that, in fact, neither the court nor the parties or the lawyers may ever have actually printed out that separate Rule 58 document as a separate piece of paper. But the panel thought that it's significant enough to delete the word paper because it wasn't properly descriptive of what actually happened with an electronic docket entry on the docket of the district court. The point of all that in that unrelated case is it sort of calls into question your suggestion that the phrase other paper is a catch-all for other things such as docket entries. Let's see. You know, Judge, one thing I should point out. So the removal under the statute is based on an amended pleading, a motion, an order, or other paper. A motion and an order can also be oral. And so appellants use this phrase, and I'm going to butcher it, as justem generis. And if you look at that and you say, okay, other paper is general, so you look at the specific words first, motion and order specifically can also refer to something written or something oral, and therefore I submit that other paper can also be oral. Any other definition, the definitions that appellants have proposed, and these are smart guys, and you're hearing from more than one appellant from really good firms that have put their brains together, and they can't propose a consistent alternative. And I was going to tell you that appellant Avondale maintains that the transcript should come from the deposition where they discuss the ship in question. Well, they aren't in exact harmony, and district courts aren't in exact harmony. But just sticking with the language of the statute, we understand your view, paper is sort of a catch-all. We do have our own precedent. Were you going to get to erectors? Yes. The difficulty with erectors for me, just so you know, is if your view distinguishing it were true, that court, every single deposition transcript would always be preceded with a deposition. So it's hard to understand how that court could have written what it wrote, that the triggering moment was the transcript, if it would always be true there was an earlier triggering moment. Well, in erectors, the court was not addressing the specific issue of whether the deposition testimony versus a deposition. But it was very explicit that the transcript was the triggering moment, and yet they wouldn't have needed to have said that. Well, what they also said, Your Honor, is they also pointed out that the deposition, and they didn't say the deposition transcript, is a new paper or event that triggers removal. And a new paper to me sounds an awful lot like other paper. And with all due respect, Your Honor, some people have pointed out that SWS erectors is confusing and not necessarily consistent. And if you look at the subsequent case law, the courts are interpreting it in opposite ways. Some cases, such as Huffman, are interpreting it to mean that the deposition testimony triggers the time for removal. Other courts are interpreting it to mean that the deposition transcript is triggering the time for removal. And I want to talk to you about, I think that the rule the appellants are suggesting today will create a circuit split, and not necessarily just with the Tenth Circuit. We have cases from five circuits that support a testimony rule. Those are the Third Circuit, the Sixth Circuit, the Eighth Circuit, the Ninth Circuit, and, of course, the Tenth Circuit in Huffman. Which is the Sixth Circuit case? The Sixth Circuit case is the Peters case. And, Your Honor, that's particularly important because for two reasons. The first is it cites Huffman. And it was not squarely addressing what's before you today. It did not squarely address whether or not the testimony versus a transcript would trigger the time for removal. But it does address Huffman in reaching its decision, which suggests that had that issue been before the court, perhaps it would have been a court with Huffman. It also addresses SWS erectors for the proposition that the testimony triggers the time for removal. And one thing that is in the Sixth Circuit opinion that I wanted to read to you because I thought it was important. Now, in this case, it's not directly on point because the plaintiff in that case conceded that it was timely removed from the time of the testimony. But the court had this to say. It said, therefore, we hold that if a defendant is able to ascertain for the first time from the plaintiff's deposition testimony that a case is removable, then a notice of removal is properly filed if it is filed within 30 days of that deposition. And that's the court's holding in that case. Okay. Now, the district court relied on that. And so it was an important case to look at. It looked to me that when they make that statement about deposition testimony, they're actually misquoting our earlier decision in 8-0. Were you able to look into that? Or have you double-checked whether the Sixth Circuit and that exact phrase, deposition testimony, in fact turns on a misquotation? I don't, Your Honor. I know the language I just read doesn't cite anything. I don't know. All I know about the 8-0 opinion is it stands for the proposition that the other paper needs to put the defendant on notice. So I can't answer your question, Your Honor. Procedurally, are the parties given a rough draft of the copy to review and make sure that the deposition is correct and that the answers were taken down correctly by the court reporter? When does the transcript become official? I mean, do we have a situation, I guess what I'm asking is, the court reporter takes it all down, but don't the parties get a chance to review it and say it's correct or it's not correct and make changes before it's actually official? And does that process make a difference? Well, I don't know if that always happens. I know it definitely frequently happens. And there's sort of an additional wrinkle, which is sometimes the deponent wants to read and sign their deposition, which certainly makes sense, and they have a period of time to do that, and a lot of times the deponent will change their mind and not do so. And so it's unclear to me when, in that timeline, if you've got a rough draft and then you've got a final draft but you've got a deponent who wants to read and sign, I can't tell you what would start the clock because you know my position, which is the testimony would start the clock. But I mean, what if Mr. Morgan would have reviewed it and said, oh gosh, that's what I said, but I really didn't work on that ship, and so my answer was not quite correct, so I want to change my answer at the deposition or maybe the court reporter didn't take it down correctly Can we depend on a rough draft that has not been approved by both sides to make a determination as to whether the case should be removed? Or do we have to wait until there's an official transcript approved by both sides and reviewed by the witness that was opposed? I think we depend on the testimony, and it's like a motion for summary judgment. If there's evidence on either side, if the defendant removes the case based on the testimony and the transcript ends up showing something else, they can attach that transcript to their opposition to the motion to remand and use that to oppose the motion to remand. But I don't think it necessarily stalls the clock in terms of the removal. Does that answer your question? Okay. In addition to looking at the other circuits that have considered this issue, I think this court can look at tenets of statutory construction. And here that would be the policy behind the statute, the congressional intent, and looking at the statute as a whole. And in terms of the policy, this is a bright-line rule. There's no question when a deposition occurs, the judge is not left trying to sift through transcripts and figure out if it's the draft transcript or the final transcript or if it's been read and signed or reading attorney affidavits to find out when they got the e-transcript. It's a clear rule, and there's nothing about a transcription that changes the deposition or the irrefutability of a deposition. In addition, in terms of the congressional intent, Congress enacted this statute in order to give the defendant an opportunity to remove a case even after the initial pleading. In addition, Congress wanted to ensure that the case was removed as quickly as possible. They wanted to do this so that the proper court would be ascertained as soon as possible and so there wouldn't be a waste of judicial and party resources in the wrong court. Again, the testimony rule meets these goals. And finally, looking at the statute as a whole, there are two provisions that are at play. Section B-1 pertains to the initial pleading, and it doesn't directly pertain to this case, but it's important because that provides that removal is triggered when there's a pleading that sets forth the grounds for removal. This Court explained in the Chapman case that a setting forth means to affirmatively reveal on its face. In Section B-3, which does apply to this case, this Court held in both Boski and again in the Mumfrey case that this need not affirmatively reveal on its face. This is important because that suggests that a writing is not necessary. And again, as I mentioned, motions and orders can be oral. They need not be written. Absolutely, under Section B-3, it must be first ascertainable that the removal is possible. And that's important because here, appellants have told you that their concern under a testimony rule is that they'll have to remove the case based on their subjective knowledge. Not so, Your Honors. B-3 is very clearly an objective knowledge test. The test is, when is it possible to first ascertain the grounds for removal? That is based on a reasonable person. The test is not, when can this defendant in this particular case ascertain the grounds for removal? Indeed, were that the test, then the defendant could wait six months or nine months down the line, remove the case at that point, and then claim that they had just then ascertained the grounds for removal. B-3, however, is very clearly an objective test. In addition, were defendants really concerned about having to remove the case subjectively, they have the privilege of cross-examining the deponent at the deposition and making sure they understand the testimony. And that's precisely what Avondale did here when it cross-examined Mr. Morgan repeatedly until they got exactly the testimony they needed to remove the case under the Federal Officer Removal Statute. For these reasons, we believe, yes, Your Honor. One question. Besides Huffman, if you claim the weight of circuit authority is your embracive voluntary act rule, what other circuit best articulates your rule that deposition oral statement would be the triggering moment? What would you point us to other than Huffman as an articulation of that? At this point, Your Honor, we talked about the Sixth Circuit case. So Peters. Peters. But I'd like to also say the Eighth Circuit case is instructive. It very clearly says that oral testimony given in open court starts the removal period. And that's important because deposition testimony is very similar to that. It's an illegal proceeding. It's given under oath. And if testimony or statements in court can start the period, so can deposition statements. Okay. Thank you. Do you all have any more questions on the untimeliness issue, Your Honors? Okay. I think I still have some time. If Your Honors do not agree that the district court should be affirmed, I implore you to consider the federal officer removal issue. Avondale tells you that you don't have to consider it. It's your prerogative whether or not to consider it. But this court can affirm on any grounds it's developed in the record. It has been fully developed. We no longer have a timing issue, do we, in terms of a plaintiff because he's already deceased? Well, the family has a trial set for February 26th. But, yes, Your Honor, Mr. Morgan has passed away. So there's not that particular urgency anymore about our deciding the issue here rather than letting the district court do that? Well, I mean, for the sake of judicial efficiency, certainly it would be important and to give the Morgan family some closure. But I do understand that you all are on a timeline due to the fact that the case has been expedited. And I'm out of time. Thank you very much. All right. Mr. Petrelli, you've saved time for rebuttal. Your Honor, I would like to start with Judge Higginson's question about the Peterson case. You are correct, Your Honor. Peterson is based on a misquote of this Court's Addo decision. Also in Peterson, Your Honor, transcript versus testimony arguments were not made. And the issue in that case is whether a deposition is an event that can create a removable event, Your Honor. Also, Your Honor, I think another important distinction between this case and Huffman. I'm curious just if the Peters error was apparent, you didn't correct it in the reply brief? It was in the district court opinion? Well, Your Honor, the reason I didn't correct it is I really didn't think it was that important. But now I believe since you brought it up, Your Honor. Yes, that's fine. Okay. This, neither the district court nor the appellees contest that this, that the federal officer removal, liberal interpretation extends to timeliness disputes. And for this panel to affirm the district court's remand order, it would have to take every benefit of the doubt in favor of remand. In particular, it would have to decide that the spoken word is written. It would have to decide that SWS Erectors is not only not binding precedent, it's not even persuasive precedent. Also, this court would just have to ignore its longstanding general rule, which SWS Erectors definitely extended to Rule 1446B. You'd have to ignore that you cannot base a removable event based on a defendant's subjective knowledge. Now, Your Honor, I wanted to briefly discuss the expedited consideration. As Ms. Malansant mentioned, we're looking at a February 26th trial date, Your Honor. So now we could move to have that trial date stayed, but right now there is a state court trial date on February 26th, Your Honor. Also, with respect to the other paper conversion, district courts in this circuit for 20 years citing SWS Erectors have had no difficulty in ascertaining the dates that defendants received deposition transcripts. There's at least, I've cited three in my reply brief, Your Honor. And there's also two others. And as this case reflects, it just is not that difficult to discern when a defendant gets the electronic copy of the transcript from the court, I mean from the court reporter. All right. Thank you, Mr. Futrell. Mr. Chakalis. Thank you, Judge. Very briefly, to come to Addo, which dealt with a letter sent by a plaintiff's counsel. Interestingly, in dissent, Judge Wiener talked about how it was, as a result of the ruling, there would be protective removals filed. And that was one of the reasons why the court ruled the way it did in Bosque, saying that it would have to be unequivocal that the ascertainment had to be unequivocal. And I think our opposing counsel kind of did concession that, well, you could file the notice of removal, and then you don't really need the transcript until you get to the opposition to remand. Well, that's not really the way it should work. It shouldn't work where we hear something at a deposition. Let's file a removal because ultimately we'll get the deposition transcript by the time of the hearing on the motion to remand. That's not really how it should work. It should work where the lawyer sees the deposition transcript and decides whether the case should be remanded. Is the last statement by your co-counsel correct, that the district courts in the Fifth Circuit are uniform in following deposition transcripts? There's no disharmony in the district courts? I don't know. I'm not sure if that is 100 percent correct. I do know that there are certainly in the Western District and the Eastern District cases, courts, judges that have made statements that clearly support our position. True. But my question, based on what he said, was, is the SWS Erector Rule so clear there's no difficulty in interpreting it in our district courts? Or has there been some deposition oral statement triggering in Fifth Circuit district courts? I think that there has been at least one or two decisions where district court judges have said, suggested that the deposition date is what triggers it. But again, the problem with these decisions is they're not, they don't go the next step and say, okay, is it really the deposition, the oral statement by the witness, or is it the deposition meaning including the deposition transcript? And that's what's kind of the problem with a lot of these cases is they don't make that distinction. Thank you. All right. Thank you, Mr. Chaklis. Your case is under submission.